UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


DEREK SINCERE BLACK WOLF CRYER,    )
     Plaintiff                    )
                        )
           v.                       )
                        )
                        ) CIVIL ACTION NO. 11-11953-PBS
LUIS SPENCER, ET AL.,              )
     Defendants.                  )


MEMORANDUM AND ORDER
March 21, 2013

SARIS, C.J.

## I.  Introduction

On October 31, 2011, plaintiff Derek Sincere Black Wolf Cryer ("Cryer"), a state prisoner at the Souza-Baranowski Correctional Center ("SBCC"),[1] filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging first amendment violations in connection with his free exercise of religion, and violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.  Additionally, Cryer asserted supplemental jurisdiction over his claims raised under Articles 2 and 18 of the Massachusetts Constitution, and over his claims asserted under Massachusetts General Law ch. 127, § 88.

Cryer originally identified two defendants in this action: Luis Spencer ("Spencer"), the Commissioner of the Department of

---

[1]      On August 17, 2012, Cryer filed a Notice of Change of Address (Docket No. 20) indicating that he had been transferred to Old Colony Correctional Center ("OCCC") in Bridgewater, Massachusetts.  Subsequently, Cryer was transferred back to SBCC. See Notice of Change of Address (Docket No. 21).

Correction, and Christopher Mitchell ("Mitchell"), the Director of the Religious Services Review Committee.

In his original complaint, Cryer claimed to be partially of Native American descent.  He described certain aspects of the Native American cultural and spiritual tradition, with a large part of the complaint focused on the alleged importance of language and oral tradition in Native American culture.  He further alleged that SBCC did not have any clergy members who could teach the Abenaki, Blackfoot, or Mohican languages and that he had very limited access to Native American services through weekly "Talking Circle Ceremonies," Compl. at ¶ 9.  Additionally, Cryer alleged that, although the defendants allowed him to have a cassette player and Native American audiotapes, he has been denied the use of these items in the "cell and yard."  Id. at ¶ 12.  Cryer claimed that the defendants' actions "abridged and prohibited" him from learning his cultural, spiritual, and ceremonial languages, in violation of his right to free exercise of religion.  Id. at ¶ 19.

On May 11, 2012, the defendants filed a Motion to Dismiss the complaint (Docket No. 10) and a Memorandum in support (Docket No. 11).  On May 23, 2012, Cryer filed a proposed amended complaint with attached exhibits (Docket No. 13).  The amended complaint included the two defendants named in the original complaint (i.e., Spencer and Mitchell), and added as a third defendant, Thomas Dickhaut ("Dickhaut"), the ex-Superintendent of

SBCC (and now the Acting Assistant Deputy Commissioner).   Am.
Compl. at ¶ 4.

   Cryer's claims are essentially twofold: (1) he has been
denied access to a cassette player and Native American audiotapes
for use in the cell and yard; and (2) he has been denied access
to a Native American clergy member or a Native American
volunteer.

   A.   Claims Regarding Access to Cassette Player and Native
        American Audiotapes

   Cryer's chief complaint is that he has been denied access to
a cassette player and Native American audiotapes for use in his
cell and in the yard.   He claims that his access to these
materials is unduly limited.   He alleges that (former)
Commissioner Clarke and Dickhaut initially had approved his
request to use a cassette player (and Native American
audiocassette tapes).   In support, he attaches a letter from
Dickhaut, dated April 24, 2009 indicating that, based on the
recommendation of the Religious Services Review Committee, his
request for a cassette player and cassette tapes featuring Native
American music had been approved.   Significantly, there were no
limitations to the approval included in the letter from Dickhaut.
See Exhibit B (Docket No. 13-2).

   Thereafter, Cryer did not receive this property as he
expected, and he filed an administrative grievance.   On August
10, 2009, the Inmate Grievance Coordinator, Pamela O'Dell,
partially approved Cryer's grievance, authorizing him to secure

the tape player <u>that was held in the Native American storage</u>
<u>unit</u>.  The cassette player would be brought to Cryer for use in
the Native American Circle.  <u>See</u> Exhibit C (Docket No. 13-3).
Cryer appealed that decision, and on September 29, 2009, Dickhaut
concurred with the decision which gave only "partial" approval to
Cryer's request.  He was permitted to secure the tape player in
the Native American storage unit and bring it up with him to the
Native American Circle.  <u>See</u> Exhibit D (Docket No. 13-4).

       Cryer claims that both Spencer and Mitchell denied his
request for access to the cassette player and audiotapes <u>in the</u>
<u>cell and yard</u>.  He alleges that by limiting his access to these
materials, the defendants are restricting his ability to learn
Native American languages by not providing him sufficient time
for study.  He further alleges that since 2009 (to the date of
filing of the amended complaint), he had used the cassette player
and audiotapes no more than 10 times because of the lack of
access of time and available space.  He contends that these
restrictions substantially limit the availability for his use
because he cannot use the cassette player and tapes except during
three ceremonies: the "Talking Ceremony," the "Smudge Ceremony,"
and the "Pipe Ceremony."  However, he asserts that he cannot use
the cassette player or audiotapes during the "Talking Ceremony"
because this would disturb other members who are conducting that
ceremony, and because this would mean he would not be able to
participate in the Talking Ceremony.  Similarly, Cryer claims

that he cannot use the cassette player or tapes on the first
Monday of each month outdoors, when the "Smudge and Pipe
Ceremonies" are scheduled, because he would disturb those
ceremonies, and would not be able to attend them.

Cryer's amended complaint again stresses the importance of
Native American language and music, calling it "essential and
necessary." Am. Compl. at ¶¶ 25-30. He attaches several
exhibits in support. Among those is Exhibit E, a typed document
that describes various aspects of the Native American religious
tradition. See Exh. E (Docket No. 13-5 at 1-4).[2] Apparently,
Cryer claims that the existence of this document establishes
defendants' knowledge of the importance of the oral tradition of
Native American culture and religion. Am. Compl. at ¶¶ 27-30.
Additionally, Cryer asserts that he has been denied access to the
cassette player and tapes during the regularly scheduled times
for Native American Services, as those services had been canceled
for the past 8 to 9 months. Finally, Cryer contends the
defendants have no legitimate penological reason to deny him the
use of the cassette player and audiotapes in the cell or in the
yard.

B.   Claims Regarding Access to Native American Clergy

In addition to his complaints about the restricted access to
a cassette player and Native American audiotapes, Cryer alleges

---

[2]      The Court presumes this document is an excerpt from the
Religious Services Handbook, which serves as a "tool and
reference source for prison administrators and inmates." Rasheed
v. Commissioner of Correction, 446 Mass. 463, 475-477 (2006).

that the defendants have refused to hire contracted Native American Clergy, and, as a result, except for the first outdoor gathering on May 7, 2012, all Native American Services have been canceled for the past 8 to 9 months (since the filing of the amended complaint).  Am. Compl. at ¶¶ 19-20.  Moreover, Cryer contends that the defendants have refused to allow him to meet on Monday mornings under the watch of Pastor Johnston or to allow Native Americans to meet Monday mornings without a volunteer present; yet there are no Native American volunteers available.

As relief, Cryer seeks declaratory and/or injunctive relief, as well as nominal, compensatory, and punitive damages.

C.   Motions Filed

On June 12, 2012, Cryer filed an *ex parte* Motion to Waive Service and for an Order to Defendants to Answer the Amended Complaint (Docket No. 15).

In addition to the earlier Motion to Dismiss, on July 24, 2012, defendants Dickhaut, Mitchell, and Spencer filed a Motion to Dismiss the Amended Complaint (Docket No. 17), along with a Memorandum in support (Docket No. 18).  On August 6, 2012, Cryer filed an *ex parte* Motion to Answer Amended Complaint (Docket No. 19) again seeking an Order for the defendants to file an Answer to the Amended Complaint, but did not file an Opposition to the Motion to Dismiss.

## II.  Discussion

A.   <u>The Amended Complaint, the First Motion to Dismiss, the Motion to Waive Service and the *Ex Parte* Motion to Answer Amended Complaint</u>

Cryer may amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  <u>See</u> Fed. R. Civ. P. 15(a). Accordingly, Cryer's Motion for Leave to File an Amended Complaint (contained in Docket No. 12) is <u>ALLOWED</u>.

In light of the filing of the amended complaint (and the subsequent filing of a Motion to Dismiss the Amended Complaint), Spencer and Mitchell's first Motion to Dismiss the original complaint is moot.  Accordingly, the defendants' Motion to Dismiss (Docket No. 10) will be <u>DENIED</u>.  Additionally, Cryer's Motion to Waive Service and to Order the Defendants to Answer the Amended Complaint (Docket No. 15), and his *Ex Parte* Motion to Answer Amended Complaint (Docket No. 19) will be <u>DENIED</u> in light of the rulings in this Memorandum and Order.

B.   <u>The Motion to Dismiss the Amended Complaint</u>

1.   <u>Standard of Review</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'"  <u>Decotiis v. Whittemore</u>, 635 F. 3d 22, 29 (1st Cir. 2011)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007).  In evaluating the

7

amended complaint, the court must delineate factual allegations from allegations that merely offer legal conclusions couched as facts or statements that are otherwise threadbare or conclusory. See Soto-Torres v. Fraticalli, 654 F.3d 153, 158 (1st Cir. 2011). "The make-or-break standard... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. at 159 quoting Sepulveda-Villarini v. Dep't. of Educ. of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010). A court must draw all reasonable inferences in the plaintiff's favor and accept all well-pleaded facts in the complaint as true. Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  This direction applies even more forcefully in pro se proceedings, for "pro se pleadings are to be liberally construed, in favor of the pro se party." Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990).  Still, a court should not credit "bald assertions... or problematic suppositions." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)(internal quotations omitted).  A court may consider documents "central to the plaintiffs' claim" or "sufficiently referred to in the complaint" without converting the motion to dismiss into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

    2.  Claims Under RLUIPA

"RLUIPA 'protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for

exercise of their religion.'"  <u>Cutter v. Wilkinson</u>, 544 U.S. 709,
721 (2005)(footnote omitted).  <u>See</u> Magistrate Judge Collings's
Report and Recommendation on Plaintiff's Motion for Partial
Summary Judgment as a Matter of Law, and Defendants' Cross Motion
for Summary Judgment (Docket No. 82 at 8) in <u>Cryer v. Clarke, et
al.</u>, Civil Action No. 09-10238-PBS; <u>Cryer v. Clark</u>, 2009 WL
6345768 (D. Mass. July 9, 2009).  This Court has adopted that
Report and Recommendation and relies on the statements of the law
contained therein, which are reiterated in part in this opinion.
<u>See</u> <u>Cryer v. Massachusetts Dept. of Correction</u>, 763 F. Supp. 2d
237 (D. Mass. 2011).

    Section 3 of RLUIPA provides, in part, that:

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined
> to an institution ... even if the burden results from a
> rule of general applicability, unless the government
> demonstrates that imposition of the burden on that
> person-
>
> (1) is in furtherance of a compelling governmental interest;
> and
>
> (2) is the least restrictive means of furthering that
> compelling governmental interest.

<u>Id.</u>; 42 U.S.C. § 2000cc-1(a)(1)-(2).

    The First Circuit has summarized the shifting burdens of the
plaintiff and the government, stating:

> a claim under RLUIPA includes four elements.  On the
> first two elements, (1) that an institutionalized
> person's religious exercise has been burdened and (2)
> that the burden is substantial, the plaintiff bears the
> burden of proof.  <u>Id.</u> § 2000cc-2 (b).  Once a plaintiff
> has established that his religious exercise has been

substantially burdened, the onus shifts to the
government to show (3) that the burden furthers a
compelling governmental interest and (4) that the
burden is the least restrictive means of achieving that
compelling interest. Id.

Spratt v. Rhode Island Dept. Of Corrections, 482 F.3d 33, 38 (1st

Cir. 2007). "RLUIPA provides greater protection to inmates'

free-exercise rights than does the First Amendment." Kuperman v.

Wrenn, 645 F.3d 69, 79 (1st Cir. 2011) citing Spratt, 482 F.3d at

42 n.12. See Bader v. Wrenn, 675 F.3d 95, 98 (1st Cir. Mar. 29,

2012). "It bars prisons receiving federal funds from

substantially burdening an inmate's religious exercise unless the

regulation under attack is the least restrictive way to advance a

compelling state interest." Kuperman, 645 F.3d at 79. RLUIPA

defines a "religious exercise" broadly as "any exercise of

religion, whether or not compelled by, or central to, a system of

religious belief." 42 U.S.C. § 2000cc-5(7)(A). A "substantial

burden" is defined as one in which the government puts

"substantial pressure on an adherent to modify his behavior and

to violate his beliefs ...." Thomas v. Review Bd. of Indiana

Employment Sec. Division, 450 U.S. 707, 718 (1981); Hudson v.

Dennehy, 538 F. Supp. 2d 400, 409-410 & n. 20 (D. Mass. 2008);

see also Rasheed v. D'Antonio, 2012 WL 4049376, *36 (D. Mass.

Sept. 12, 2012)(defining a "substantial burden" as "'put[ting]

substantial pressure on [him as an] adherent to modify his

behavior and to violate his beliefs.'" (quoting Spratt, 482 F.3d

at 38 quoting Thomas, 450 U.S. at 718)); Cryer v. Massachusetts

Dept. of Correction, 763 F. Supp. 2d at 244 (where this Court discussed the definition of "substantial burden," noting, *inter alia*, that the statute did not define this term, and that the First Circuit assumed, *arguendo*, the applicability of the Thomas standard in Spratt, but did not definitively adopt it).

Here, the defendants' defenses to each of Cryer's claims hinge on the contention that he cannot show that there is a substantial burden on his religious exercise due to the restrictions on his access to the cassette player and tapes.  The defendants stop there and do not address in any meaningful fashion the compelling governmental interest or the least restrictive means of achieving that interest, nor do they address Cryer's second claim regarding the lack of access to a Native American clergy member or volunteer for a substantial period of time.

Cryer has presented undisputed evidence concerning the importance of Native American Languages (see Exhibit 13-5). Native Americans do not have a holy book as such because their spiritual traditions come from oral tradition.  Based on this record, the Court concludes that Cryer has sufficiently alleged he suffers a substantial burden on his free exercise of religion by the limitations on access to a cassette player and Native American tapes.  Specifically, he has alleged that the limitations force him to refrain from participation in other Native American ceremonies and/or inhibit his use of the cassette player and tapes in order not to disturb the practices of co-

11

inmate members.   In other words, Cryer claims that the
restriction serves as a constructive denial of his right to the
cassette player and tapes because it forces him to choose whether
to listen to the audiotapes and forgo certain essential Native
American ceremonies with other members, or participate in those
ceremonies and give up all opportunities to listen to the tapes.

The defendants argue that there are no Native American
ceremonies and practices available at SBCC that require his
ability to understand and speak Native American tribal languages.
The fact that this may not be "required" during the ceremonies at
SBCC does not undermine the allegation that the languages are
central to the exercise of Cryer's religion, and that the
restrictions on Cryer force him to choose whether or not to
participate in other religious activities with other inmates.
Thus, Cryer has alleged sufficiently that he is forced to modify
his religious behavior, to violate his religious beliefs, and/or
to depart significantly from his religious traditions, and that
the restrictions do not amount simply to an "incidental" impact
on his religious exercise.

Further, defendants have not given any explanation for the
lack of any Native American clergy member or volunteer or the
availability of comparable clergy.  See Mayfield v. Texas Dep't
of Criminal Justice, 529 F.3d 599, 614-15 (5th Cir. 2008)(holding
the availability of an outside volunteer only once every 18
months, and no evidence that new volunteers would likely be
available to reduce burden on prisoner's ability to worship in a

12

group, permitted a reasonable basis for a factfinder to conclude the prison's volunteer policy imposed a substantial burden).

In short, although the defendants argue in their Memorandum that there is no substantial burden from a restriction on a prisoner if there are alternative means to pursue his religion, they have not offered information to demonstrate that there are, in fact, alternative means available to Cryer, nor have they shown there is a compelling governmental interest in imposing the restrictions.[3]

Accordingly, this Court will not dismiss Cryer's RLUIPA claim based on the defendants' assertion that he has failed to establish a substantial burden upon his free exercise of religion.

> a.   Monetary Damages Under RLUIPA: Official Capacity Claims

Next, defendants contend that Cryer cannot recover monetary damages against them under RLUIPA for conduct done in their official capacities because Massachusetts has not waived its sovereign immunity from suit for damages.   This Court agrees. See Sossamon v. Texas, 131 S. Ct. 1651, 1660 (2011)(holding that the phrase "appropriate relief" was "not so free from ambiguity

---

[3]     The Court is mindful that the pleadings in Cryer's other free exercise case (Civil Action No. 09-10238-PBS) indicate that the SBCC defendants asserted that the volunteer had left and that SBCC was searching for a new volunteer.   See Defendants' Response to the April 9, 2012 Order (Docket No. 165). Apparently, none has been found, but it is unclear what the current status is.

that we may conclude that the States, by receiving federal funds, have unequivocally expressed intent to waive their sovereign immunity to suits for damages."). Thus, under a strict construction in favor of the sovereign state, as required, the Supreme Court concluded that appropriate relief for violations of RLUIPA did not include monetary damages against a state. <u>Id.</u>

Since Cryer cannot recover damages against the state, he likewise may not recover monetary damages against a state official sued in his official capacity. "...[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989). Thus, Cryer's monetary claims under RLUIPA against the defendants Spencer, Mitchell, and Dickhaut, in their official capacities, will be <u>DISMISSED</u>.

   b.   <u>Personal Capacity Claims Under RLUIPA</u>

Since Cryer may not recover monetary damages under RLUIPA against the defendants in their official capacities, the next question is whether he could recover monetary damages against the defendants in their personal capacities. Although the First Circuit has declined to rule on this issue, <u>see</u> <u>Kuperman</u>, 645 F.3d at 78-79, other courts have found that RLUIPA does <u>not</u> provide for personal capacity claims for monetary damages, where

14

Congress passed RLUIPA under the authority of the Spending Clause, courts should not impose individual liability on those who do not receive federal funds, and the individual is not a party to the contract for federal funds.

The Third, Fourth, Fifth, Seventh, Tenth, and Eleventh Circuits have taken the view that personal capacity claims for monetary damages under RLUIPA are barred. See Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012)(holding no personal liability since the defendants were not parties to the contract between the state and the federal government); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009)(In enacting RLUIPA, Congress did not state with sufficient clarity an intent to subject an individual to damages); DeMoss v. Crain, 636 F.3d 145, 151 (5th Cir. 2011)(RLUIPA does not create a cause of action for damages against defendants in their individual capacities); Sossamon v. Lone Star State of Tex., 560 F.3d 316, 327-29 (5th Cir. 2009), aff'd, Sossamon v. Texas, 131 S.Ct. 1651 (2011); Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012); Nelson v. Miller, 570 F.3d 868, 886-89 (7th Cir. 2009)(as a statute enacted pursuant to the Spending Clause, RLUIPA does not apply to those not receiving federal funds); Stewart v. Beach, 701 F.3d 1322, 1335 (10th Cir. 2012)(Spending Clause legislation operates as a contract, and individual defendants are not parties to the contract); Hathcock v. Cohen, 287 Fed. Appx. 793 (11th Cir. 2008)(unpublished

15

decision relying on <u>Smith v. Allen</u>, 502 F.3d 1255, 1275 (11th
Cir. 2007) <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Sossamon</u>, 131 S.Ct. at
1655, 1657 n.3 (abrogating <u>Smith</u> as to its holding that RLUIPA
abrogated a state's sovereign immunity from suit for money
damages)).[4]

The First, Second Sixth, Eighth, and Ninth Circuits have not
reached the issue.  <u>See</u> <u>Kuperman</u>, *supra*, 645 F.3d at 79 (1st
Cir.); <u>Hall v. Ekpe</u>, 408 Fed. Appx. 385 (2d Cir. 2010)(declining
to reach issue in view of the determination that defendants were
entitled to qualified immunity); <u>Heard v. Caruso</u>, 351 Fed. Appx.
1, 13 (6th Cir. 2009)(unpublished decision, declining to reach
issue because parties had not briefed it and case was being
remanded to District Court); <u>Zajrael v. Harmon</u>, 677 F.3d 353, 355
(8th Cir. 2012)(declining to consider issue because the amended

---

[4]    Many district courts have also held that personal
capacity suits under RLUIPA are barred.  <u>See e.g.</u> <u>Pettiford v.</u>
<u>Davis</u>, 2012 WL 2577499, *11 (S.D. Ind. 2012); <u>Quinn v. Knab</u>, 2012
WL 2504160, *8 (S.D. Ohio 2012)(noting that plaintiff may only
obtain injunctive relief for RLUIPA violations); <u>Easterling v.</u>
<u>Pollard</u>, 2012 WL 666797, *6 (E.D. Wis. 2012)(money damages are
not available for plaintiff under RLUIPA, but the Act does
authorize injunctive relief.  <u>But</u> <u>see</u> <u>Israelite Church of God in</u>
<u>Jesus Christ, Inc. v. City of Hackensack</u>, 2012 WL 3284054, *6
(D.N.J. 2012)("the RLUIPA provision at issue was enacted pursuant
to the Commerce Clause, and the rationale in these Spending
Clause cases does not apply.... In the absence of any controlling
or other appellate authority on this question, this Court finds
the relevant RLUIPA provision similar to § 1983, which has been
held to allow actions against officials in their personal
capacities."); <u>Knapp v. Kench</u>, 2012 WL 2061701, *7 (D.N.H.
2012)(declining to comment on the merits but permitting personal
capacity claim to proceed with service because the First Circuit
declined to rule expressly on the issue).

complaint did not specifically name defendants in their individual capacities); <u>Van Wyhe v. Reisch</u>, 581 F.3d 639, 655 n.6 (8th Cir. 2009)(noting that the district court concluded RLUIPA did not permit personal capacity claims, but that conclusion was not at issue on appeal); <u>Shilling v. Crawford</u>, 377 Fed. Appx. 702 (9th Cir. 2010)(unpublished decision declining to decide issue because defendants were entitled to qualified immunity).

In the absence of First Circuit directives on this issue, this Court aligns itself with the majority of appellate courts holding RLUIPA does not provide for monetary damages against defendants in their individual capacities, as the bases for that conclusion are sound.  Accordingly, Cryer may only seek injunctive relief under RLUIPA, and his claims for monetary damages against the defendants in their personal capacities will be <u>DISMISSED</u>.[5]

c.  <u>Qualified Immunity Under RLUIPA</u>

Defendants argue that they are entitled to qualified immunity from monetary damages on the RLUIPA claims because Cryer has not shown a "substantial burden" on his free exercise of religion.  Having found that Cryer has alleged sufficiently a substantial burden, but also having concluded that Cryer has no

---

[5]     In view of this ruling, the Court need not address the impact of Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) (barring a federal action by a prisoner for emotional or mental distress absent a physical injury).  That issue is discussed in connection with the § 1983 claims, *infra*.

cognizable claim for monetary damages against the defendants in their personal capacities, the issue of qualified immunity with respect to the RLUIPA claims need not be addressed further.  The issue will be addressed, however, in connection with Cryer's § 1983 claims.

        d.   <u>Claims For Declaratory and Injunctive Relief</u>

The only issue remaining on the RLUIPA claims is Cryer's request for declaratory and injunctive relief against the defendants Spencer, Mitchell, and Dickhaut in their official capacities. For the foregoing reasons, the defendants' Motion to Dismiss the Amended Complaint will be <u>DENIED</u> in this regard.

      3.   <u>First Amendment Claims Under 42 U.S.C. § 1983</u>

        a.   <u>Failure to Allege Legitimate Penological Interest</u>

Defendants contend that Cryer's First Amendment free exercise claims under 42 U.S.C. § 1983 must be considered in the prison context, where the right to free exercise is curtailed in order to achieve legitimate penological interests such as correctional goals (*e.g.*, deterence of crime, rehabilitation of prisoners) or institutional security.  See <u>O'Lone v. Shabazz</u>, 482 U.S. 342 (1987); <u>Turner v. Safley</u>, 482 U.S. 78 (1987).  Prison officials should be accorded broad deference in the adoption of policies and practices that are needed to preserve internal order and discipline in the prison.  See <u>Bell v. Wolfish</u>, 441 U.S. 520, 547-48 (1979); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 566 (1974).

18

In evaluating this claim, the court must determine:

(1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remains open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates"; and (4) whether there is an "absence of ready alternatives."

Turner, 482 U.S. at 89-90 (citations and internal quotation marks omitted).

While that assertion of law is true, as a factual matter, the defendants in this case <u>do not allege with any specificity what legitimate penological interests are at stake</u> in limiting Cryer's access to a cassette recorder and audiotapes (*i.e.* not allowing him to possess those materials in his cell or in the yard), nor do they allege any factual reason for denying him access to a Native American clergy member or volunteer.

### b.   No Monetary Damages for Official Capacity Claims

Next, defendants Spencer, Mitchell, and Dickhaut argue that no monetary damages can be awarded to Cryer in connection with his § 1983 claims against them in their official capacities.  The Court agrees.  See Will, *supra*, 491 U.S. at 71.

### c.   No *Respondeat Superior* Liability

The defendants assert they are not liable under § 1983 based on the theory of *respondeat superior*.  Ruiz v. Riley, 209 F.3d 24 (1st Cir. 2000).  Cryer asserts that he is not basing liability under a *respondeat superior* theory; rather, he asserts <u>direct</u>

19

liability of Dickhaut, Spencer, and Mitchell, claiming that each of these defendants denied his requests to use the cassette player and tapes in his cell and in the yard.

In particular, Cryer alleges the defendants refused to provide additional time and space for him to study and practice Native Languages and Learn Native Music, that they refused to hire contracted Native American Clergy, that they refused to allow him to meet on Monday mornings under the watch of Pastor Johnston, and that they refused to allow Native Americans to meet on Monday mornings without a volunteer present, but there are no Native American volunteers available.  Further, Cryer alleges that each of the defendants knew of the great importance of the oral tradition in Native American Culture.

For purposes of evaluating whether Cryer has stated plausible § 1983 claims, knowledge of Dickhaut and Mitchell reasonably may be inferred based on the recommendation of the Religious Services Review Committee (of which Mitchell is the Director) and the initial approval by Dickhaut of the request for cassette players and tapes and later modification to a partial approval.

With respect to Commissioner Spencer, however, other than raising a bald allegation that this defendant knew of his free exercise requests and refused to honor them, Cryer has not set forth any underlying supporting facts from which knowledge on the part of this defendant reasonably could be inferred.  Indeed,

despite his claim to the contrary, Cryer appears to be holding Spencer liable under a theory of *respondeat superior* for actions of his predecessor, Commissioner Clarke.  <u>See</u> Am. Compl. (Docket No. 13 at ¶ 11) (stating: "Defendant Spencer (Predecessor) denied Plaintiff's request to use the Cassette Player and Tapes in the cell and yard").  In light of this, and in view of Cryer's failure to file any Opposition to the motion to dismiss addressing the issue, this Court finds that Cryer has failed to state plausible claims against Spencer in his personal capacity.

Accordingly, the § 1983 claims against Spencer in his personal capacity will be <u>DISMISSED</u>.

      d.   <u>Impact of 42 U.S.C. § 1997e(e) As a Bar to Monetary Damage Claims</u>

Next, the defendants contend that Cryer cannot recover compensatory damages under § 1983 because under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), "no federal action may be brought by a prisoner .... for mental or emotional injury suffered while in custody, without a prior showing of physical injury."  <u>Id.</u>  The case law is split on whether § 1997e(e) applies to bar compensatory damages only (leaving the availability to recover nominal or punitive damages), or whether the statutory provision applies to constitutional claims at all.

The First Circuit has not addressed expressly the application of § 1997e(e),[6] and there is a split in other

---

      [6]    However, the First Circuit in <u>Kuperman</u>, *supra*, intimated that at the least, nominal and punitive damages <u>are</u>

circuits addressing this issue, with the majority of appellate courts holding that § 1997e(e) bars <u>all</u> suits for monetary damages for emotional or mental distress absent a physical injury, including those claims based on constitutional deprivations.

Specifically, the Second, Third, Fifth, Eighth, Tenth and Eleventh Circuits have held that § 1997e(e) applies to all federal civil actions, regardless of the underlying constitutional violation. <u>See</u> <u>Thompson</u>, 284 F.3d at 417 (2d Cir.)(agreeing with majority of sister courts holding that § 1997e(e) applies to constitutional claims including the Eighth Amendment claim asserted by prisoner); <u>Mitchell v. Horn</u>, 318 F.3d 523 (3d Cir. 2003)(claims for nominal or punitive damages are not barred by § 1997e(e) since they are not "for" mental or emotional

---

recoverable.  The First Circuit stated:

> Although neither party discussed the Prison Litigation Reform Act, we note that it could preclude Kuperman from recovering on his § 1983 claim seeking compensatory damages. *See* 42 U.S.C. § 1997e(e). Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  <u>Although some courts have interpreted section 1997e(e)'s limitation not to apply to constitutional claims, *see generally Thompson v. Carter*, 284 F.3d 411, 416–17 (2d Cir. 2002)(collecting cases), we need not reach the issue.  It does not matter whether compensatory damages are available to Kuperman, because his requests for nominal and punitive damages are enough to keep his claims alive</u>.

<u>Id.</u> at 73 n.5 (emphasis added).

injury, but are used to vindicate constitutional violations or
deter or punish for egregious violations) <u>citing</u> <u>Allah v.</u>
<u>Al-Hafeez</u>, 226 F.3d 247, 251-52 (3d Cir. 2000)(in free exercise
claim, nominal or punitive damages were not barred under
§ 1997e(e), but compensatory damages were barred absent a
physical injury)[7]; <u>Mayfield</u>, 529 F.3d at 605 (5th Cir.)(holding,
in free exercise and RLUIPA case, that application of § 1997e(e)
turns on the relief sought, preventing a prisoner from seeking
compensatory damages for violations of federal law), <u>citing</u>
<u>Geiger v. Jowers</u>, 404 F.3d 371, 375 (5th Cir. 2005)[8]; <u>Sisney v.</u>
<u>Reisch</u>, 674 F.3d 839 (8th Cir. 2012)(§ 1997e(e) barred
compensatory damages) <u>cert. denied</u>, 133 S.Ct. 359 (2012); <u>Royal</u>
<u>v. Kautzky</u>, 375 F.3d 720, 723 (8th Cir. 2004);[9] <u>Searles v. Van</u>

---

[7]     <u>Cf.</u> <u>Doe v. Delie</u>, 257 F.3d 209, 324 n.3 (3d Cir.
2001)(dissenting opinion in medical privacy case stating that
punitive damage claim should be barred by § 1997e(e) but the
claim for nominal damages should not be barred).

[8]     The Fifth Circuit has held that an inmate's failure to
allege physical injury in connection with a Fourth Amendment
claim arising out of a strip search precluded recovery for
compensatory damages for emotional injury, but the failure to
allege physical injury did not preclude a claim for nominal or
punitive damages.  <u>See</u> <u>Hutchins v. McDaniels</u>, 512 F.3d 193, 197
(5th Cir. 2007).  By contrast, the D.C. Circuit and the Eleventh
Circuit have concluded that § 1997e(e) makes no distinction
between compensatory and punitive damages.  <u>See</u> <u>Davis v. District</u>
<u>of Columbia</u>, 158 F.3d 1342, 1348 (D.C. Cir. 1998); <u>Al-Amin v.</u>
<u>Smith</u>, 637 F.3d 1192, 1199 n.9 (11th Cir. 2011)(holding in case
alleging mail opening and denial of access to the courts and free
speech, prisoner could not seek punitive damages absent physical
injury) <u>cert. denied</u> <u>Smith v. Al-Amin</u>, 555 U.S. 820 (2008).

[9]     <u>Royal</u> stated:

We join the majority, concluding Congress did not

Bebber, 251 F.3d 869, 876 (10th Cir. 2001)(holding in free
exercise of religion suit that the plain language of § 1997e(e)
is not premised on the basis of the underlying rights being
asserted.  The statute limits the remedies regardless of the
rights asserted) cert. denied 536 U.S. 904 (2002); Al-Amin, 637
F.3d at 1197-98 (11th Cir.)(holding there is no distinction
between constitutional claims such as the Eighth Amendment, where
physical injury may be likely, and those rarely accompanied by a
physical injury such as First Amendment violations; Prison
Litigation Reform Act applied equally to constitutional claims).

The Fourth Circuit has not addressed this issue, while the
Sixth Circuit noted the differing views but expressly declined to
reach the issue because the case at bar hinged on the failure to
exhaust administrative remedies.  See Taylor v. United States,
161 Fed. Appx. 483, 487 (6th Cir. 2005).

---

intend section 1997e(e) to limit recovery only to a
select group of federal actions brought by prisoners.
Instead, we read section 1997e(e) as limiting recovery
for mental or emotional injury in all federal actions
brought by prisoners. In reaching this conclusion, we
cannot escape the unmistakably clear language Congress
used: "No Federal civil action may be brought by a
prisoner ... for mental or emotional injury ... without
a prior showing of physical injury."  To read this
statute to exempt First Amendment claims would require
us to interpret "[n]o Federal civil action" to mean
"[n]o Federal civil action [except for First Amendment
violations]." If Congress desires such a reading of
section 1997e(e), Congress can certainly say so.  We
cannot.

Royal, 375 F.3d at 723.

By contrast, the Seventh and Ninth Circuits have taken a different view of the application of § 1997e(e).  See Rowe v. Shake, 196 F.3d 778, 781-82 (7th Cir. 1999)("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained."); Robinson v. Page, 170 F.3d 747, 748 (7th Cir. 1999)("when ... a prisoner alleges [a constitutional] injury that is neither mental nor emotional, the court has no occasion to consider the meaning of the statutory term 'physical injury[.]'")[10] Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002)("[t]o the extent that appellant has actionable claims for compensatory, nominal or punitive damages - premised on alleged Fourteenth Amendment violations, and not on any alleged mental or emotional injuries - we conclude the claims are not barred by § 1997e(e)"); Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998)(stating: "[t]he deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred.  Therefore, § 1997e(e) does not apply to First Amendment claims regardless of the form of relief sought.").  The circuit split appears to center upon

---

[10]    See also Thomas v. Illinois, 697 F.3d 612 (7th Cir. 2012)(physical injury is not the only type of injury actionable in a civil rights suit; injunctive relief, nominal and punitive damages are available); Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir. 2003)(nominal or punitive damages may be awarded for Eighth Amendment violation itself).

whether the focus should be on the nature of the cause of action, or instead on the remedies.[11]

In this District, Judge Gertner concluded that § 1997e(e) did not apply where damages were sought for a constitutional injury. Shaheed-Muhammad v. Dipaolo 138 F. Supp. 2d 99, 107 (D. Mass. 2001) citing Gordon v. Pepe, 2004 WL 1895134, *2 (where Judge Zobel concluded the physical injury requirement of § 1997e(e) did not require summary judgment in a claim for First Amendment violations that did not involve a claim for emotional distress); Shaheed-Muhammad v. Dipaolo, 393 F. Supp. 2d 80, 107 -08 (D. Mass. 2005)(reaffirming ruling in summary judgment context); see also Ford v. Bender, 2012 WL 262532, *13 (D. Mass. Jan. 27, 2012)(concluding that § 1997e(e) had to be raised as an affirmative defense, and, in any event, that compensatory damages were available for suits alleging deprivation of constitutional rights) motion to amend decision denied, 2012 WL 1378651 (D. Mass. Apr. 19, 2012)(citations omitted).[12]

---

[11]    Additionally, the matter raises the issue whether the violation of intangible constitutional rights (such as First Amendment rights) is an emotional or mental injury, or whether, standing alone, the violation constitutes a cognizable injury apart from any emotional or mental injury.

[12]    In her Findings of Facts and Conclusions of Law, Magistrate Judge Dein noted as support Justice Marshall's concurring opinion in Memphis Comty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986)(stating that deprivations of constitutional rights can, in and of themselves, constitute compensable injuries; to hold otherwise "would defeat the purpose of § 1983 by denying compensation for genuine injuries caused by the

The <u>Ford</u> case is presently pending appeal in the First Circuit, and the issue of the application of § 1997e(e) has been raised in that appeal.   <u>See</u> <u>Ford v. Bender</u>, No. 12-1622 (1st Cir. 2012) and related appeal, <u>Ford v. St. Amand</u>, No. 12-2142 (1st Cir. 2012).   In light of the pending appeal, this Court declines to resolve this issue at this time.   Accordingly, the Court will <u>DENY</u> the defendants' Motion to Dismiss the Amended Complaint based on the bar of § 1997e(e).

   e. <u>Qualified Immunity</u>

Next, as an additional ground for dismissal of Cryer's § 1983 claims, defendants argue that even if his free exercise of religion was violated, qualified immunity protects the defendants (now limited to Dickhaut and Mitchell) from liability for monetary damages in their personal capacities.   Cryer has not addressed these issues with respect to his claim regarding the cassette and audiotapes or his claim regarding a volunteer clergy member.

Accordingly, for the reasons set forth by the defendants, the Motion to Dismiss the Amended Complaint will be <u>ALLOWED</u> as to the § 1983 claims for monetary damages against Dickhaut and Mitchell in their personal capacities, based on qualified immunity.

---

deprivation of constitutional rights.").

    f.   <u>Claims For Declaratory and/or Injunctive Relief</u>

    On this record, this Court cannot find that the defendants have shown sufficiently that Cryer is not entitled to declaratory or injunctive relief.   Accordingly, the defendants' Motion to Dismiss the Amended Complaint will be <u>DENIED</u>.

    4.   <u>Claims Under the Massachusetts Constitution</u>

    Turning now to Cryer's claims based on state law, defendants argue that, for the same reasons raised in connection with the RLUIPA claims, Cryer fails to set forth claims under Article 2 of the Declaration of Rights and Article 46 of the Amendments to the Massachusetts Constitution.   Further, they argue that monetary damages are not available under the State Constitution, citing <u>Martino v. Hogan</u>, 37 Mass. App. Ct. 710, 720 (1994).   The Court agrees with the defendants.   "To bring a claim of a violation under the Massachusetts Constitution, [a plaintiff] must allege a cause of action under the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I."   <u>Grubba v. Bay State Abrasives, Division of Dresser Industries, Inc.</u>, 803 F.2d 746, 748 (1st Cir. 1986); <u>Martino v. Hogan, et al.</u>, 37 Mass. App. Ct. 710, 711, 643 N.E.2d 53 (1994)"); <u>see</u> <u>Orell v. Umass Memorial Medical Center, Inc.</u>, 203 F. Supp. 2d 52, 71 (D. Mass. 2002).[13]

_____

    [13]   Cryer's amended complaint does not allege any claims under Mass. Gen. Laws ch. 12, §§ 11H and 11I, and this Court will not construe the amended complaint as raising such claims, even under a broad reading of the amended complaint.   In order to set forth a claim under the Massachusetts Civil Rights Act, Cryer must have alleged that the exercise or enjoyment of rights secured by the Constitution or the laws of either the United

Accordingly, the Motion to Dismiss the Amended Complaint will be <u>ALLOWED</u> as to any claims raised pursuant to the Massachusetts Constitution.

5.   <u>Claims Under Mass. Gen. Laws ch. 127, § 88</u>

Cryer asserts claims under section 88 of Chapter 127 of the Massachusetts General Laws, providing for the free exercise of religion, but the right shall not be construed to impair the discipline of the prison.  Mass. Gen. Laws ch. 127, § 88.[14]

_____

States or the Commonwealth of Massachusetts have been interfered with, or were attempted to be interfered with, and that the interference was by threats, intimidation, or coercion.  Mass. Gen. Laws ch. 12, § 11H-I.  <u>See, e.g.</u>, <u>Rasheed v. Commissioner of Correction</u>, 446 Mass 463, 475 (Mass. 2006)(rejecting prisoner's claim based on deprivation of religious liberty, where policies were based on legitimate security concerns, and where the record was devoid of facts demonstrating any cognizable threats, intimidation, or coercion).

[14]   The statute provides:

An inmate of any prison or other place of confinement shall not be denied the free exercise of his religious belief and the liberty of worshipping God according to the dictates of his conscience in the place where he is confined; and he shall not be required to attend any service or religious instruction other than that of his own religious belief, if religious services and instructions of his own belief are regularly held at the institution; and he may, in illness, upon request to the superintendent, keeper, receive the visits of any clergyman whom he may wish. The officers having the management and direction of such institutions shall make necessary regulations to carry out the intent of this section. This section shall not be so construed as to impair the discipline of any such institution so far as may be needful for the good government and the safe custody of its inmates, nor prevent the assembling of all the inmates, who do not attend a regularly held religious service of their own belief, in the chapel thereof for such general religious instruction, including the reading of the Bible, as the officer

As an initial matter, Cryer's state law claim for monetary
damages against defendant Spencer in his <u>personal</u> capacity will
be <u>DISMISSED</u> for the reasons set forth in connection with the
§ 1983 claims (*i.e.*, failure to set forth a plausible claim upon
which relief may be granted).

Additionally, Cryer's state law claim for monetary damages
against defendants Spencer, Dickhaut, and Mitchell in their
<u>official</u> capacities will be <u>DISMISSED</u> for the same reasons set
forth in connection with the § 1983 claims (*i.e.*, sovereign
immunity).  <u>See</u> <u>Lopez v. Massachusetts</u>, 588 F.3d 69, 73 n.1 (1st
Cir. 2009); <u>Duclerc v. Massachusetts Dept. of Correction</u>, 2012 WL
6615040, *4 (D. Mass. Dec. 18, 2012)(stating that the Eleventh
Amendment bars state law claims for monetary damages against
state officials, citing, *inter alia*, <u>Guillemard-Ginorio v.</u>
<u>Contreras-Gomez</u>, 585 F.3d 508, 531 (1st Cir. 2009).  Cryer has
not set forth any basis for finding that a waiver of sovereign
immunity exists with respect to his state claim, and this Court
has found none.

In their Motion to Dismiss, the defendants simply argue that
the Department of Correction has promulgated regulations
providing for the free exercise of religion, and Cryer has failed
to demonstrate the restrictions on access to a cassette player
and Native American language/music audiotapes in his cell and in
the prison yard substantially burdens his ability to practice his

having charge of the institution considers expedient.
Mass. Gen. Laws ch. 127, § 88.

religion.   For the reasons discussed above, the Court disagrees
and finds that, for purposes of overcoming the Motion to Dismiss,
Cryer has met his burden.   Moreover, the defendants fail to
address Cryer's second claim regarding the lack of a volunteer
clergy member.

Nevertheless, although the defendants have not raised the
issue, the Court notes that Cryer has not set forth a basis for
monetary damages under this statue.   State law indicates that
§ 88 does not establish a private right of action for damages for
violations.   See Riva v. Secretary of Public Safety, 76 Mass.
App. Ct. 1104, 2009 WL 5084095, *2 (Mass. App. Ct. 2009)
(subsequent history omitted).   This Court has not found any law
to the contrary.   In the absence of any legal basis for finding
§ 88 provides a private cause of action for damages, this Court
will follow the state's interpretation and will dismiss the
monetary damages claims against the defendants Spencer, Dickhaut,
and Mitchell.[15]

---

[15]    As an additional matter, although the defendants raise
§ 1997e(e) as a bar to the § 1983 claims, they have not addressed
the applicability of § 1997e(e) in connection with the state
claims for monetary damages.   District court cases are split as
to its application.   See, e.g. Bromell v. Idaho Dept. of
Corrections, 2006 WL 3197157 (D. Idaho 2006)(holding that
§ 1997e(e) did not bar a state law claim under the Court's
supplemental jurisdiction); cf. Schonarth v. Robinson, 2008 WL
510193, *4 (D.N.H. 2008)(agreeing with the line of cases holding
that § 1997e(e) applied to all actions brought in federal court
seeking damages for mental or emotional injury, regardless of
whether the action is based on federal or state law).   See Jacobs
v. Pennsylvania Dept. of Corrections, 2011 WL 2295095 (W.D. Pa.
2011)(collecting cases).

Accordingly, this Court will <u>ALLOW</u> the Motion to Dismiss the Amended Complaint with respect to Cryer's claims for monetary damages against all defendants in their official capacities and in their personal capacities, and otherwise will <u>DENY</u> the motion.

In sum, in light of all of the above, defendants' Motion to Dismiss the Amended Complaint (Docket No. 17) will be <u>ALLOWED</u> in part and <u>DENIED</u> in part, as set forth in more detail below.

C.   <u>Order for Joint Discovery Plan</u>

In view of the rulings contained herein, the only remaining claims are: (1) Cryer's RLUIPA claims for relief other than for monetary damages (*i.e.* declaratory and/or injunctive relief) against the defendants Spencer, Dickhaut, and Mitchell in their official capacities; (2) the § 1983 claims for relief other than monetary damages (*i.e.* declaratory and/or injunctive relief) against defendants Spencer, Dickhaut, and Mitchell in their official capacities; and (3) the claims for declaratory and/or injunctive relief raised pursuant to Mass. Gen. Laws ch. 127, § 88 against Spencer, Dickhaut and Mitchell in their official capacities.

The parties are hereby Ordered to submit a joint plan, within 21 days of the date of this Memorandum and Order, addressing the following: (1) the date for the filing of an answer to the amended complaint; (2) the date for the filing of any dispositive motions; (3) the conducting of discovery in connection with the remaining claims; and (4) any other outstanding issues that should be brought to this Court's

attention.  If no joint discovery plan can be reached after good
faith efforts to resolve or narrow the issues, the parties may
submit separate proposals.

### III.  Conclusion

Based on the foregoing it is hereby Ordered that:

1.    Plaintiff's Motion for Leave to File an Amended Complaint
      (contained in the Opposition to the Motion to
      Dismiss)(Docket No. 12) is <u>ALLOWED</u>.  The amended complaint
      (Docket No. 13) is the operative pleading in this action;

2.    Defendant Spencer and Mitchell's Motion to Dismiss the
      Complaint (Docket No. 10) is <u>DENIED</u> in view of the amended
      complaint;

3.    Plaintiff's Motion to Waive Service and to Order Defendants
      to Answer the Amended Complaint (Docket NO. 15) is <u>DENIED</u>;

4.    Plaintiff's *Ex Parte* Motion to Answer Amended Complaint
      (Docket No. 19) is <u>DENIED</u>;

5.    Defendants' Motion to Dismiss the Amended Complaint (Docket
      No. 17) is <u>ALLOWED</u> in part and <u>DENIED</u> in part,
      as follows:

      A.    With respect to plaintiff's RLUIPA claims, the
            motion to dismiss is <u>ALLOWED</u> as to plaintiff's
            claims for monetary damages against all of the
            defendants in their official capacities but
            otherwise is <u>DENIED</u> as to claims for declaratory
            and/or injunctive relief;

      B.    With respect to plaintiff's RLUIPA claims, the
            motion to dismiss is <u>ALLOWED</u> as to plaintiff's
            claims for monetary damages against all of the
            defendants in their personal capacities;

      C.    With respect to plaintiff's § 1983 claims for
            monetary damages against the defendants in their
            official capacities, the motion to dismiss is
            <u>ALLOWED</u>, but otherwise is <u>DENIED</u> as to claims for
            declaratory and/or injunctive relief;

D.   With respect to plaintiff's § 1983 claims against the defendants in their personal capacities, the motion to dismiss is <u>ALLOWED</u>;

E.   With respect to plaintiff's claims raised under the Massachusetts Constitution, the defendants' motion to dismiss is <u>ALLOWED</u>;

F.   With respect to plaintiff's claims raised under Mass. Gen. Laws ch. 127, § 88, the motion to dismiss is <u>ALLOWED</u> as to any claims for monetary damages against defendants Spencer, Mitchell, and Dickhaut in their official and personal capacities, but otherwise is <u>DENIED</u> with respect to claims for declaratory and/or injunctive relief;[16] and

6.   Within 21 days of the date of this Memorandum and Order, the parties shall submit a Joint Discovery Plan with respect to the conduct of discovery, the filing of dispositive motions, and the remaining issues in this case.


SO ORDERED.


<u>/s/ Patti B. Saris</u>
PATTI B. SARIS
CHIEF, UNITED STATES DISTRICT JUDGE

---

[16]   The rulings made on defendants' Motion to Dismiss the Amended Complaint are not intended to constitute a separate or final judgment.

34